IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:16-69-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| NIKIJA J. JACKSON ) | |
| _____ ) | |

This matter is before the court on the defendant's fourth *pro se* motion[1] for a reduction in his sentence pursuant to the First Step Act of 2018[2] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 1262). As a result of COVID-19, the Flu, RSV, and the novel variants, the defendant claims that his health conditions have deteriorated and warrant consideration of his release from prison.

The government opposes the defendant's motion, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] The defendant's appeal of this court's order denying the defendant's third motion for compassionate release (ECF No. 1224) was affirmed by the Fourth Circuit Court of Appeals in its mandate filed on June 14, 2023 (ECF No. 1241).

[2] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

1

## PROCEDURAL HISTORY

On January 19, 2016, a federal Grand Jury returned an Indictment alleging that the defendant was responsible for distributing a quantity of cocaine and 28 grams or more of cocaine base. Because the defendant had at least one prior felony drug conviction, he faced a mandatory minimum sentence of 10 years. On February 20, 2019, the defendant pleaded guilty pursuant to a written plea agreement (ECF No. 1008) to a lesser conspiracy than charged in Count 1 (he pled only to "a quantity of cocaine"), and contained a binding stipulation to a sentence of no more than 120 months, pursuant to Fed. R. Cr .P. 11(c)(1)(C).

The United States Probation Office (USPO) prepared a Presentence Investigation Report (PSR) (ECF No. 1040) and determined that the defendant was a career offender. His criminal history category of VI and total offense level of 34 resulted in a guideline range of 262 to 327 months. The plea agreement's stipulation under Rule 11(c)(1(C) to an agreed upon sentence of 120 months was well below the 263 to 327 months suggested by the PSR

On July 31, 2019, this court accepted the stipulation contained in the plea agreement, granted a variance, and sentenced the defendant to 108 months incarceration and three years of supervision.

The defendant is scheduled to be released from the BOP on June 10, 2026.

## STANDARD OF REVIEW

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824 (2010).

However, the commonly termed "compassionate release" provision of § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. Under this statute, a district court may reduce a criminal defendant's sentence if the court finds extraordinary and compelling reasons that warrant such a reduction after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, as well as "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act of 2018, courts could only consider compassionate release upon motion of the Bureau of Prisons (BOP). *See United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). Today, however, § 3582(c)(1)(A) allows a defendant to file his own motion for compassionate release directly with the federal court so long as he first fully exhausts all administrative remedies.

Although Congress did not define "extraordinary and compelling" reasons in § 3582(c)(1)(A), the Sentencing Commission addressed the issue in a Policy Statement—United States Sentencing Guideline (U.S.S.G.) § 1B1.13—which provided the BOP with several categories of "extraordinary and compelling reasons" to consider. *McCoy*, 981 F.3d at 276.

For years following the passage of the First Step Act in 2018, the Sentencing Commission did not update § 1B1.13 to account for motions filed directly by defendants, meaning that the policy did not bind the courts when presented with a defendant's motion for compassionate release. *Id*. at 281– 82, 284. A court, therefore, remained "empowered . . .

to consider any extraordinary and compelling reason for release that a defendant might raise." *Id*. at 284 (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (alteration and emphasis in original).

However, on November 1, 2023, the Sentencing Commission, via Amendment 814, amended U.S.S.G. §1B1.13(b)(1)–(6) to address compassionate release motions brought directly by a defendant and to clarify and expand the list of what may qualify as an extraordinary and compelling reason to support a sentence reduction. The qualification list falls into several categories: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was the victim of certain abuse while in custody; (5) any other circumstances or combination of circumstances that, when considered by themselves or together with any of the preceding categories, are similar in gravity; and (6) an unusually long sentence if the defendant meets certain conditions. The policy statement also recognizes the possibility that the BOP could identify other grounds that amount to extraordinary and compelling reasons.

Courts may not modify a sentence once imposed with few exceptions. 18 U.S.C. § 3582(c). One exception is compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. To grant a compassionate release motion under § 3582(c)(1)(A)(i), the district court must conduct a two-step analysis. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). First, the court must find "extraordinary and compelling reasons" warranting a sentence reduction. *United States v.*

*Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022). After a district court finds that an "extraordinary and compelling" reason for sentence modification exists, it must then evaluate the relevant § 3553(a) factors. *Id*. at 195.

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. First, the court determines whether extraordinary and compelling reasons support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission. Finally, if the court finds that an extraordinary and compelling reason warrants relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021); *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). The court must also determine that such a reduction would be consistent with "applicable policy statements issued by the Sentencing Commission." *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024).

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

Finally, the defendant bears the burden to establish that he is eligible for a sentence reduction under § 3582. *Centeno-Morales*, 90 F.4th at 279.

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021), 18 U.S.C. § 3582(c)(1)(A).

The government does not dispute the defendant's claim that he has exhausted his administrative remedies. Thus, the court will proceed to review the matters on the merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

After November 1, 2023, U.S.S.G. § 1B1.13(B)(i) now provides that extraordinary and compelling reasons can exist if: (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease; or (II) an ongoing public health emergency declared by the appropriate federal, state or local authority.

Fortunately, the threat of COVID has now greatly subsided and there does not exist at present an ongoing public health emergency declared by the appropriate federal, state or local authorities. Additionally, the government notes that the defendant has previously contracted COVID-19 and appears to have successfully recovered.

The court will note, however, that on May 11, 2023, the United States Department of Health and Human Services ended the federal Public Health Emergency for COVID-19. The public health emergency prong in U.S.S.G. § 1B1.13 requires that the emergency be declared by an appropriate governmental authority. As of the date of this order, there is no new declared emergency involving the BOP or the public in general.

*The Defendant's Medical Conditions*

The defendant claims that the threat of COVID-19 and its novel variants, influenza, and RSV make him especially vulnerable to becoming seriously ill due to his underlying medical conditions. In his first motion for compassionate release, the defendant noted that he was a paraplegic, suffered from bladder and bowel incontinence, had high blood pressure, and back and neck pain. In his present motion, the defendant asserts that his medical needs are significant and he requires around the clock home care. He contends that the environment at the BOP is a clear and present threat to his health and safety.

The defendant also complains of his conditions of confinement that the showers are of small size; that FMC-Butner has a history of negligence and in some cases abuse involving delayed medical treatments; and medical staff shortages. He argues that his needed health care can be more effectively provided in the community, not in the BOP. The defendant indicates that upon his release, he will live with his wife and daughter in South Carolina.

The defendant is currently 50 years of age. Indeed, his chronic medical conditions are well documented in the record and when he was sentenced by this court. The Presentence Report (PSR) (ECF No. 1024) prepared in 2019, noted that the defendant was in fair health and that he was injured during a motor vehicle collision in 1992, leaving him unable to bend over or reach his lower body, and confined to a wheelchair. This court noted in its order on the defendant's first motion for compassionate release (ECF No. 1098), that the defendant's five separate drug dealing convictions over the years were all committed after he suffered his

8

spinal cord injury.

The government contends that the defendant is essentially recycling the same arguments regarding his medical conditions and that he has not shown extraordinary and compelling reasons for release. The government asserts that his medical conditions appear to be well-controlled within the institution and he receives treatment in response to his complaints and ailments. In August 2024, a BOP official noted that the defendant needed minimal assistance with his activities of daily living and that the defendant was seen in his room with no distress, and he denied pain or discomfort.

*Post Sentencing Conduct*

The government indicates that the defendant has not had any disciplinary infractions other than those noted in 2020 for relatively minor offenses. The government also notes that the defendant has taken various educational courses and had a work detail. Finally, the government states that the defendant remains at a high-risk recidivism level and is housed at a medium security level.

This court has carefully considered the matter and finds that the defendant has not met his burden of establishing that he is eligible for consideration of release due to his medical conditions because he has not presented extraordinary and compelling reasons to warrant such a reduction.

*Home Confinement*

The defendant again seeks home confinement relief under the Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020, however, this court has no authority to direct the BOP to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation passed by Congress to address the COVID-19 pandemic does not alter this. *See* CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.") Accordingly, the defendant's request for home confinement is denied.

*U.S.S.G. Amendment 821 Reduction*

The defendant asks this court to reduce his criminal history by points in light of U.S.S.G. Amendment 821 and 18 U.S.C. § 3582(c)(2). Retroactive U.S. Sentencing Guideline § 4A1.1(e), took effect November 1, 2023. Part A of the amendment addresses "Status Points," decreasing them by 1 point for individuals with 7 or more criminal history points and eliminating status points for those with 6 or fewer criminal history points. Subpart 1 of Part B creates a new § 4C1.1 guideline that provides a decrease of 2 offense levels for

"Zero-Point Offenders" (those with no criminal history points) whose offense did not involve specified aggravating factors. Parts A and B, subpart 1 of the criminal history amendment both have retroactive effect.

The defendant's total offense level was 34 and his criminal history category was VI. His total criminal history score was 5. Due to his designation as a career offender, his criminal history category was raised from III to VI.

A review of the PSR reveals that the defendant did not receive any "status points" pursuant to U.S.S.G. § 4A I.1(d) when his criminal history score of VI was calculated. Thus, Part A of Amendment 821 relating to status points does not apply to the defendant. As for Part B, the defendant had 5 criminal history points, so the zero point provision does not apply to him either. Accordingly, his request for a reduction under U.S.S.G. Amendment 821 is denied.

## CONCLUSION

The court has carefully considered the totality of the record before it and conducted an individualized analysis of the facts and issues raised by the parties under the recent changes in sentencing laws and amendments to the Guidelines.

In summary, this court does not find an extraordinary and compelling reason for consideration of compassionate release on defendant's claims relating to his medical conditions. As the court finds no extraordinary and compelling reason on any of the

11

defendant's claims, it is not necessary for the court to address the § 3553(a) factors.

For the reasons stated herein, the defendant's motion for compassionate release (ECF No. 1262) is respectfully denied.

The defendant's motions for appointment of counsel (ECF No. 1263) and for this court to hold a video conference (ECF No. 1264) are denied as well.

IT IS SO ORDERED.

March 12, 2025
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge